Good afternoon. May it please the Court. My name is Leonard Feldman, and as you noted, I'm the lawyer for the appellant, Ross Richardson, which is the Chapter 7 trustee for Yellowstone Club World, and with me at council table is Dave Kottner, who's counsel for Richard Sampson, the Chapter 7 trustee for the estate of Edward Blexer, and I've been asked to let you know that Mr. Kottner will not be arguing today. You have essentially identical positions, right? Absolutely identical positions. Okay. Go ahead. I just look last to him every so often and see if he shakes his head vigorously, we'll know that. We'll know that I made a mistake. There's a difference, but go ahead. Your Honors, when CIC initially refused to defend its policyholder, it gave one and only one reason for that decision. And that reason that it gave was that the notice of a claim had been submitted by somebody other than the name insured. And that is the third-party notice issue in this case, and it is the central issue on appeal. And I would submit that it's really the only issue that this Court needs to decide in order to resolve this appeal. And that issue, as we explain in our briefing, has been authoritatively resolved by the Montana Supreme Court in two decisions, the Newman case and the Stadley case. In the Newman case, there is an issue as to whether certain information ---- I'm sorry. Those dealt with the question of who has to present the claim? They deal with the ---- the Stadley case does. It doesn't? The Newman case deals with the information that an insurance company has to consider when deciding whether to deny or provide a defense. Were those both claims-made policies? They were not claims-made policies, Your Honor, and it's not relevant. Every policy, whether it's a claims-made policy or an occurrence policy, they have numerous conditions precedent to coverage. And what the Montana Supreme Court has done, and it's done this over and over and over again, is it has said that if there is any possible argument in favor of coverage, then there has to be ---- of the notice provision first. You do and you don't. And the reason I say you don't ---- Well, let's focus on the do part. I mean, there is a do. There's also a don't. Right. But I think we're at the do stage here. You know, what happened is the court looked at it and said, this just doesn't fall within the scope of this notice provision. Wrong party. You know, look at the wording. So there's nothing to argue about. There's no evidence to present. That's what the court said. That's what you have to deal with. Right. Now, did either of those two cases, let me ask you again, you rely on Newman. Newman did not deal with a who presented the claim issue, right? It dealt with who provided the do. Just answer my question. Correct, Your Honor. Okay. Did the other case you cited? It did, Your Honor. Okay. Talk to me about that case. Okay. And did it resolve? Did it say that who presents the claim doesn't matter? It did say that, Your Honor. And let me explain how it said that. Which case was that? Which case was that? Stately. Okay. So Stately is a case where notice was not provided in accordance with the condition proceeding policy. And the insurance company denied coverage on that basis. And the Montana Supreme Court said that the third-party claimants in that case, those are the Statelys, that those third-party claimants could avoid the effects of this violation of the terms of the policy, quote, by simply notifying the insurers themselves. So what the Montana Supreme Court said in Stately is that when the policyholder does not give notice, a third-party claimant can. And the only argument we've heard about Stately is that portion of the Court's decision is dicta. And I would agree that it's dicta, but this Court has held time and time again that in diversity cases the considered dicta of the State Supreme Court is controlling. And then we combine that, of course. Okay. I'm sorry. But this was not a case where a third party gave notice. This was a party where they said, well, somebody else could have. They said that the third-party claimant could give notice. Could give notice. And was that a they were interpreting a particular clause. What does the clause say in Stately? The clause in Stately said that. Is it identical to the clause in our case? No. It wasn't identical to the clause. It was quite different, wasn't it? It was. I'm sorry? It was different, yes. Okay. So let's look at Stately. I have it in front of me. Do you have it in front of you? Let's look at the case. Sure. You have it? You can't look at it by looking up at me. Understood. Okay. So what does the clause in Stately say? Or what did the notice clause say in Stately? Well, the notice clause in Stately, I'm not looking at the case, but I know what the notice clause says. The notice clause required that the policyholder see to it that notice is given. See to it. Right? So that is language that by its terms does not make it, does not require the notice to be actually given by the death. That's right. But that's not what the Montana Supreme Court said. I understand. But that's not what the Montana Supreme Court said. The Montana Supreme Court didn't say that the third party claimant can see to it. You can say there is dicta and we have to take it seriously. That part I understand. But it's got to be dicta on something that actually has applicability to our case. And the language is different. Then it not only becomes dicta, but also irrelevant dicta. I think, Your Honor, that you are going to disagree. No? I don't agree that it's irrelevant dicta. I think it's a statement of the Montana Supreme Court. A panel of this Court has certified an issue to the Montana Supreme Court. It has. In fact, it did it just last week in the Atlantic casualty case. I'm sorry. What happened? It did it just last week in the Atlantic casualty case. Okay. And? And that's an important case because what the Court of the Ninth Circuit said there, getting back to your comments about, you know, this is a condition precedent, was that the Montana Supreme Court has not authoritatively decided whether failure to give notice can be excused if there's a lack of prejudice. And your argument that it has authoritatively decided it? Not the notice prejudice issue, Your Honor. What it has authoritatively decided, we submit, is that when an insurance company is denying a defense, not indemnity issues, but a defense, it's required to consider all of the information that's available, including information whether it's as to a condition precedent of underlying coverage in Newman or a claim as in Staley. It has to consider all of that information. And there's a very large ---- I'm confused. Yes. Their ground here was that the notice was improper. Correct. Right. And the issue certified to the Montana Supreme Court is whether, as I understand it, where there is improper notice, there also has to be prejudice before it prevails. Right. So, therefore, the premise of this certification is that there isn't clear Montana law on that question, right? Correct. Right. So why don't ---- why, if that's what we thought the dispositive issue was here, wouldn't we have to ---- I don't understand why you think there's a different issue. Well, the issue in Atlanta Casualty was there was no notice whatsoever until after the stipulated judgment had already been executed, and the court was deciding in the absence of any reasonable ---- It was improper notice, right? Right. In the absence of ---- This was improper notice is what they're claiming. Correct. So why isn't the same question arise, i.e., does there have to be prejudice? It does, but you don't have to reach it. Because? Because there was notice by Mr. Amston in his letter, and we would submit, and we've argued this in our briefs, that the second letter was itself sufficient to give notice. So you don't have to reach the prejudice issue because we have ---- But whether it was a property of notice. It wasn't property of notice under the way the notice provision is written because it wasn't from the insurer, right? Correct. So it wasn't proper. That's correct. Therefore, you have to be arguing that it wasn't prejudicial. We can argue that or we can argue ---- But that's the only thing. So why are you arguing other than that? Because there is a substantial body of law throughout the United States, and it has been adopted in Montana, that a third party can give notice. Because it's not prejudicial. I don't understand what that means. It must be because it's just as good. Correct. I see your point. So therefore, it's because it's not prejudicial. You're right. There are two sides of the same coin. Therefore, if we thought that was the governing issue here, we would presumably wait for the Montana Supreme Court. I think that's a reasonable approach. All right. So you have 43 seconds left. Could you address for me in those 43 seconds why there is a potential for coverage here? There is a potential for coverage here, Your Honors, because if you look at the body of law in Montana, and Newman, Newman is a very significant case because it articulates a standard, arguably available. Coverage is arguably available. There is a duty to defend. So first, there is a legal argument from statally that coverage is arguably available. And secondly, there's a factual argument comparing the Seckett's letter on the one hand with the Amston letter on the other. It is not clear to the insurer at the time that it receives those two letters that there has not been adequate notice. So what is factually, what is it in the, what was it, the January, what's it, the proof of claim? Yeah, that was the February 3, 2010 letter from Amston. And Mr. Seckett's letter of? It's January 2009. Right. So factually, why is there a potential for coverage? Well, they raise the same issues. If you look at Seckett's letter, he's talking very specifically about transfers without protecting the interests of YMCA. Transfers, but the transfers were from YMCA. And these, and what's covered by the Amston letter seems to be exactly the opposite for the most part. Well, you say for the most part, and I think that's really significant. Well, and the rest of it doesn't seem pertinent.  If you look at the Amston letter, and I haven't read it. Is there anything in the Amston letter that involves transferring fraudulent transfers from YMCA to somewhere else? Failure to take steps to block a fraudulent transfer in favor of Edward Blixit. Failure to safeguard the properties of others, including YCW. I don't know. Is there anything that deals with YMCA? Yeah. Transferring property from YMCA improperly. That's what he's referring to. Which one? Pardon me? Which one? YMCA 5 in particular. ER 202. He's referring to transfers out of YMCA to the detriment of YCW. And those are the same issues that Sekats is bringing up in his letter. And if you look at what Mr. Amston attaches to his letter, there's a summary of claims, and the summary of claims involved transfers without respecting the rights of use and option agreements. That's also to the detriment of YMCA. But I thought the YCW was different, that that was this other entity that was going to get property from YMCA but didn't have it yet. Right. And the properties were transferred out of YMCA in a way that did not protect the interests, the options, and the rights of use of YCW. Right. But that wasn't because it was a fraudulent transfer from YMCA. It didn't matter whether it was fraudulent or not. All that mattered was that it was a transfer. And so when you look at those two letters and you factor that into the, quote, arguably available standard that is set out for the first time in Newman, coverage was arguably unfavorable. Well, explain to me how it would be arguably available. Well, if you look, again, at the allegations that are set out in the Amston letter, failure to safeguard the property of others, including YCW, what does that mean? We know from Montana law that it has to be given the most expansive interpretation possible. It can arguably include, just as the bankruptcy court held, it can arguably include the same transfers and the same unauthorized transactions that are set out in the second letter. And that's one of the errors that we submitted the bankruptcy court made, is that once it found that there were issues of fact, coverage is arguably available. And, of course, it didn't have Newman available to it at the time. But when you say, as the bankruptcy court did, that coverage, that there are issues of fact as to whether these two claims interrelate and whether notice was given by the right party, that's another way of saying it's arguably available. And I hope if you have an opportunity to look at the Pacific Hyde case, it's a federal district court decision that came out on the heels of Newman. It shows just how far Newman has pushed the ball forward. It's a case that finds a duty to defend and goes so far as to say it is mystifying why insurance companies, knowing what Montana law is on this subject, don't provide a defense subject to a reservation of rights and file a DEC action. And when they do that, they take the risk that there's going to be a stipulated judgment, or in this case an allowed claim, and under Montana law, they're liable for that amount. And that's the relief that we're requesting. Okay, thank you. We'll hear from the other side. May it please the Court, Nancy Torday for Cincinnati Insurance Company, along with Marilyn McLean, who is sitting at the council table. Thank you. The definitive issue in this case is not simply that notice was not given in accordance with the policy. We agree that Judge Kershaw properly ruled following the trial on all the merits and found under judgment for Cincinnati when the insured had failed to submit the claim, as was expressly required by the Cincinnati policy. And so you just said you're not going to base your argument on that. It's not the definitive. And now you're going to tell us this thing you're not going to argue. Excuse me, Your Honor. You're going to go ahead and waste time doing that. Well, notice was one reason. So why don't you tell us what you are going to argue, not what you're not going to argue. You're not basing your argument on the wrong party having filed notice. No, no, we are, Your Honor. Excuse me. We are. I'm saying that because the wrong party gave notice. Who cares? I mean, the point is notice. And who cares who gave the notice? An insurance company gets notice. What does it matter who sent it? I mean, you know, if it's insured or an insured's lawyer or an insured's mother, who cares? I mean, the insurance company gets notice. Why is that a material term? It's a contractual issue in the policy. This is a claims-made policy known colloquially as a wasting policy. You can say that. You can say that. And, you know, you can sometimes say, well, you will give notice or X will give notice. But it's usually not material. It usually doesn't matter who it is. I mean, let's say you're a consumer and you have a warranty claim. Does it, you know, will, you know, Microsoft, you know, Dell, Samsung, whoever, say, oh, you put in your warranty claim, your mother did it and not you or your wife or your cousin did it? No. I mean, the point is we got notice. And if you get the notice in on time, who thinks of the originator of the notice and why would it matter to the insurance company who the person is who signs the notice? So long as they give notice. The point is notice. The point is not the identity of. Well, two points, Your Honor, very quickly. It's a wasting policy. So contractually, Cincinnati and the insured agreed that the insured would decide whether to submit a claim to Cincinnati. And what's important in this case is that that's the contract between the parties. And Judge Persher properly enforced the contract in accordance with Montana law. But secondly, if you look at the facts of this case, Mr. Anston. If you want to argue about that point, I thought you were going to bypass that. But if you're going to argue about it, is it, is that really the contract? Is that a material term of the contract? Or is it just a sort of way of phrasing the duty to give notice? You will give notice. It doesn't necessarily mean you personally. It just means notice shall be given. It's a condition precedent to coverage under the contract. Yes, Your Honor. Precedent is what is in the. Condition precedent under the contract. But why is it a condition precedent? I understand that notice would be a condition precedent. But why is who gives notice a condition precedent? Because pursuant to the contract. Why does it matter to the insurance company? Why is this the kind of thing you bargain for? It matters because the insurance company elected to the insured to decide whether to make a claim. It matters because receiving a letter. Well, but the way the contract is otherwise set up, the insured can give a notice, as was happened here in the earlier letter, that we think somebody might sue us. But, and then the insurance company writes back and says, well, we're not going to do anything about that until somebody sues you. Right? Well, it's a. So what is the difference then between, I mean, that kind of notice, i.e. somebody might sue me, is functionally the same as what they got from the Amsterdam letter, i.e. something happened and somebody might want us to pay for it. I mean, that doesn't tell you, it could be that they should go back to the insurer and say to the insured person, do you want us to pay for it? But as to the first stage, i.e. knowing that something happened, they got that notice in the Amsterdam letter. Now, there's a timing problem. I understand that. But leaving that aside for now. Amston, Mr. Amston in his letter was not submitting a claim for Cincinnati to defend. Mr. Amston, as Judge Kershaw found, was making a direct claim as a third party against the policy. What's significant here is that it wasn't just proof of claim 46 that was enclosed with Mr. Amston's letter. There was proof of claim 664 filed against Yellowstone Mountain Club. It was Yellowstone Mountain Club who sent the notice of wrongful acts that may lead to a claim to Cincinnati. They never submitted that proof of claim to Cincinnati for coverage. It's settled. They never sought indemnity for it. There was a lawsuit enclosed with that letter filed by Richardson against Tim Blixup. Yellowstone Mountain Club, when claims were actually made, which the insurer needs to be apprised of, submitted other lawsuits against Mr. Blixup. Neither Mr. Blixup nor Mountain Club submitted Richardson v. Cincinnati. I mean, excuse me, Richardson v. Blixup to Cincinnati Insurance Company. Mr. Blixup and Y.C. Dell and Richardson settled that case. It's undisputed. No one sought indemnity from Cincinnati. The facts in this case bear out the fact that the insured determined which claims to submit to Cincinnati for coverage and defense. Importantly, but going on. So different from common experience with, let's say, automobile insurance. Yeah, the insured is supposed to let the insurance company know I've been in an accident. Somebody might sue. But lots of insurers don't do it. And then what happens is the guy who gets hit contacts the insurance company and says, hey, you insured hit me and I am damaged. I've never heard an insurance company say, no, sorry, we're not going to pay you because we didn't get any notice from insurance. And if they tried anything like that, they would get their heads handed. And they would be in bad faith at that point. Well, two things, Your Honor. The auto policy is different. It's an occurrence policy. And secondly, as Judge Kershaw recognized, after Mr. Amston was advised that you're not the insured, we're not going to respond to you, he could have easily asked Mr. Samson or YMC to submit the claim, but he did not. Yeah, neither of those are answered. I mean, so it's different, so what? But that's sort of the common experience. You know, insurance companies won't know this. And they say, look, it's different if nobody tells them. And it says, look, this thing is now two years later. We had no idea. We can't go in. We can't take photographs. We can't interview witnesses and whatnot. But then when they get actual notice and they say, oh, whoops, wrong party, we're not going to deal with it, come on. This is a little silly. It's a contractual provision. But if I may move on very quickly.  Timeliness is not a timeliness. Well, the relevance of the timeliness problem is the fact that the policy is not even triggered. No duty to defend is possible. There's no possibility of coverage unless a claim is made during the policy period. Right. And I gather there are two issues with regard to that here. One is whether we consider it at all because it wasn't the basis on which the coverage was denied. And the second is how, is the one that we were discussing at the end, which is how do the pieces fit together. That is, does the first letter, in fact, provide sufficient connection to the second? On the first point, Your Honor, as to it wasn't the basis on which the coverage was denied, the appellants are misstating Newman. Newman addressed only waiver of late notice. This is the issue. Only what? I didn't hear you. The waiver of late notice. Right. The issue here is whether a coverage term that implicates coverage is the claim made during the policy period. Because it's a claims-made policy. It's a claims-made policy. You can't extend the policy coverage as a matter of law through waiver or as they had alleged in the pretrial order. All right. What about the second question? The second question is, Your Honors, are absolutely correct. The transfer Yellowstone Mountain Club complained of transfers, fraudulent and illegal, I'm sorry, unauthorized and illegal transfers of assets from Yellowstone Mountain Club to persons outside of Mountain Club. Proof of Claim 46 did not arise out of those transfers of assets. If any asset transfers were complained of in Proof of Claim 46, it was transfers of assets from Yellowstone Club World, as counsel acknowledged, an entirely different entity. What about that part of the letter that says, that opposing counsel has, that talked about assets of any other party? The letter does not mention assets of any other party. Okay. What does it say? It simply says the failure to protect. Failure to safeguard the property of others. Excuse me, Your Honor? Isn't that it? Failure to safeguard the property of others. Yes. But it does not refer in any instance to the fraudulent and illegal transfer of Yellowstone Mountain Club assets. Well, it then says resulting in claims as specified above, so it just refers back to the one before. That's right. It's referring back to the transfer of assets. It's referring to the one before. From Yellowstone Club World. And it's referring to Idra Blixset's failure to defend Yellowstone Club World in two pieces of litigation that led to a default judgment. It's referring to the failure of Idra Blixset to record options and rights of use that they claimed were granted to Yellowstone Club World. Proof of Claim 46, I think it's very important. So essentially, number five is not freestanding. It's simply. That's correct, Your Honor. And it's very important for the court to also remember that the appellants stipulated to this. When they filed their motion in January 2011, asking Judge Kershaw to give them relief from the stay and to go after Cincinnati Insurance Company, they stipulated that Yellowstone Club World was damaged due to Idra Blixset's failure to record options and rights of use. It's disingenuous for the appellants to stand here and say that Yellowstone Club World was damaged. That, as I understand it, the damage was therefore resulted in Yellowstone Club World not getting the assets as opposed to Yellowstone Mountain Club keeping the assets. Is that right? That's right. Because it wasn't recorded, it stayed with Yellowstone Mountain Club. That's right. Because Yellowstone Mountain Club was supposed to be buying for the benefit of Yellowstone World Club or whatever it's called, but that depended on the options being recorded and so on. That's correct. And, Your Honor, this So does all this arrive from the mistransfer of funds from Yellowstone Mountain Club? No, because Yellowstone Club World is arguing That's the whole, that's the whole Yes, but That's the whole thing, so it seems to evolve from that. No, no. No? Respectfully, no. Because Yellowstone Club World is not alleging that the properties should have never been purchased, that I think what you're referring to is the Credit Suisse money Yes. That was used to purchase the properties. They're not. If you read Proof of Claim 46, they're not alleging the properties should not have been purchased. They're alleging They're claiming We should have gotten it. We should have gotten our rights in it protected and they weren't. Correct. Their claim isn't arising out of an unauthorized or illegal transfer from Yellowstone Mountain Club. They're saying, yeah, it should have been. But we were damaged because IDRA failed to record the options and rights of use that were granted to us on that property through the five-party agreement. Which all arises from the money. Right? That five-party agreement all was, you know, focuses on the money. But the Proof of Claim 46 does not arise from an illegal and unauthorized use of the money. Yellowstone Club World actually says in the sheet that it was proper, the properties should have been purchased. The five-party agreement is enforceable. It's a polar opposite. What the Credit Suisse issue is, is, no, you should have never bought any property at all. One did not arise out of the other. I think. Okay. Thank you. I'm out of time, Your Honor. Thank you very much. And we request the Court affirm the judgment. I think I called you out of time as well. Do you want to take a minute for rebuttal? If I could, Your Honor. Thank you. Opposing counsel made the comment that the insured should determine which claims to submit. Well, the insured did. Mr. Sackett's asked for a defense in this case. A year later, of course. But that collapses the two issues, right? I mean, that argument basically says we therefore have to decide that the Amiston letter did arise out of the same claims. Right. And it collapses the two issues in the sense that it addresses the third-party notice issue first, but it also resolves the timeliness issue second. Because they're all seconds in January. But what about the fact, I mean, on that question, it seems to me that you're relying on number five, which is not freestanding. It says resulting in claims as specified above. So that's what they're talking about. Right. But when it says claims as specified above, the claims are one through five on pages one through two. No, the claims are one through four. I'm reading number five. Well, I think that's your interpretation of the letter. But a broad and expansive interpretation of this letter is required by Montana law. Okay, so what's the broad and expansive interpretation? Well, these are the claims. Proof of claim 446 or 664, proof of claim 46, those are all claims. Okay. And so when number five says failure to safeguard the property of others, including YCW, resulting in the claims as specified above, I think that a more broad and expansive interpretation of this letter is required by Montana law.  So what about the claims one through five? Okay. So what in that claim, what in those claims has to do with the transfer of money from? Well, POC 46, if you look at POC 46, there's a summary of the claims and it refers to claims of assets being relinquished by YMC without protecting the rights of YCW, assets that were lost in bankruptcy proceedings. It attaches a copy of the club fact sheet, which lists all these properties, and it includes a copy of the five-party agreement, which goes back to Mr. Seckett's letter that these transfers were in violation of applicable law. And I think as Judge Pai has correctly put it, it's all one big bundle. And when Mr. Seckett said we've gotten notice of wrongful acts that we're giving to you and we want a defense on these claims, that when CIC received those claims, it was required at the very least to contact the estate of S. Edra Blixith and determine whether there was a need for a defense. And it did nothing at all other than send a letter to Mr. Amston saying we refuse to respond. And that was a breach of the duty to defend and it has financial consequences under the Montana law. Okay. Thank you, Your Honor. The argument stands admitted. We're adjourned.
judges: KOZINSKI, PAEZ, BERZON